# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENE QUINTANILLA, | CV F  06-1454 OWW DLB HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| KATHY MENDOZA-POWERS, | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is represented by Marc Grossman, Esq.

## BACKGROUND[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation ("CDCR") pursuant to a judgment of the Fresno County Superior Court.  On November 24, 1986, Petitioner was convicted of second degree murder and sentenced to a term of fifteen years to life.  (Exhibit A, attached to Answer.)

In the instant petition for writ of habeas corpus, Petitioner does not challenge his underlying conviction; rather, Petitioner challenges a decision of the California Board of Parole Hearings ("BPH") finding him unsuitable for parole following his parole consideration hearing on March 1, 2005.

---

[1] This information is derived from the petition for writ of habeas corpus, Respondent's answer to the petition, and Petitioner's traverse.

1

Petitioner filed a petition for writ of habeas corpus in the Fresno County Superior Court, which was denied in a reasoned opinion on November 14, 2005. (Exhibit D, attached to Answer.)

Petitioner then filed a petition for writ of habeas corpus in the California Court of Appeal, Fifth Appellate District, which was summarily denied on June 1, 2006. (Exhibit E, attached to Answer.)

Petitioner filed a petition for writ of habeas corpus in the California Supreme Court, which was summarily denied on July 26, 2006. (Exhibit F, attached to Answer.)

Petitioner filed the instant petition for writ of habeas corpus in the United States District Court for the Central District of California on October 3, 2006. The petition was transferred to this Court on October 10, 2006, and filed on October 18, 2006.

Respondent filed an answer to the petition on April 3, 2007, and Petitioner filed a traverse on April 10, 2007. (Court Docs. 10, 11.)

## STATEMENT OF FACTS[2]

On the afternoon of February 12, 1986, 16-month-old Ren Casey Sherman, had been taken to Valley Medical Center for emergency treatment. The child later died and police were contacted to investigate the circumstance surrounding the young victim's injuries. The doctor that conducted the autopsy on the 16-month-old victim one day after his death found a number of bruises all over the front left side and back of the victim's head, which would have been consistent with the child falling. In addition he found numerous marks over the cardiac area and along the end of the rib area. During the actual autopsy he found two tears in the victim's liver and discovered the spleen was torn in two areas. It was the doctor's opinion that these injuries were not consistent with an accidental fall. The established cause of death was shock and hemorrhage due to multiple abdominal organ injuries. A detective interviewed the victim's 22-year-old mother and learned that Rene Quintanilla was her live-in boyfriend. The detective learned from the mother of the victim that Quintanilla hated her son because he looked so much like the real father. Quintanilla told the detective that he was playing with the victim's older brother when he heard a large crashing sound from the children's bedroom. Quintanilla said he found the victim lying on his stomach at the bottom of the staircase. [¶] Quintanilla then put the victim back in the bed to go to sleep. In addition, Quintanilla had informed the detective that he had hit the victim earlier in the day as the child was crying when he placed him to bed and he slapped him in the arm. Later on the victim fell out of bed again, hit his head on a table as he was falling to the floor. [¶] Quintanilla indicated he put the victim back in the bed and left him there because he appeared okay. Subsequently a

---

[2] These facts are taken from the Parole Consideration Hearing Transcript, which relied on a Counselor's Report dated February 2005. (Exhibit B, at 11-14.)

police officer was transporting Quintanilla from the police station to the Valley Medical Center for a drug sample. A casual conversation took place about religious faith and defendant Quintanilla stated that he killed a kid. Quintanilla while in jail requested plain paper and several pencils from the victim's mother that she supplied. Quintanilla wrote on the paper, I did it, I stepped on Ron's [sic] stomach. I don't even feel bad about it. I know I'll go to jail."

## DISCUSSION

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination

3

of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the

states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

The court looks to the last reasoned state court decision as to the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991)). Here, the last reasoned state court opinion of the Fresno County Superior Court found that "some evidence" supported the Board's finding of unsuitability of parole. **(**Exhibit D.**)**

II.     Review of Claims

A parole release determination is not subject to all of the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979) (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id.

"In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court further held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in

the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128.  In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence.  Id.  Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board.  Id., *citing* Superintendent v. Hill, at 455-56.  Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term."  Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the BPH is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

With regard to the procedural protections, Petitioner received all that was due under Greenholtz.  Petitioner was provided all that is required.  Petitioner was provided with advance notice of the hearing, an opportunity to submit materials for the BPH's consideration, an opportunity to be heard during the hearing, and a written decision explaining the reasons that parole was denied.  **(**See Exhibit B.**)**

At Petitioner's 2005 hearing, the BPH denied parole primarily on the circumstances of the commitment offense, but also for Petitioner's lack of insight and remorse for committing the offense, history of unstable relationships, prior criminality, and recentness of rehabilitation and

1  need for further self-help therapy.  In denying Petitioner's state habeas corpus petition, the Fresno
2  County Superior Court (the last reasoned state court opinion), found that "some evidence" did
3  not support the BPH's findings that his prior criminal record, former substance abuse, and
4  recentness of rehabilitation.  However, the state court found that Petitioner's commitment offense
5  "is particularly egregious and therefore [was] sufficient to support the Board's finding that
6  petitioner poses an unreasonable risk to public safety and to defer his next parole hearing for
7  another three years."  (Court Doc. 14; Exhibit D, at 3.)  There has been no argument by
8  Respondent that this finding was based on an unreasonable determination of the facts in light of
9  the evidence.  Accordingly, as Petitioner points out, Respondent's argument that the additional
10 factors further support the BPH's denial is not persuasive as these findings were struck down by
11 the state court.  **(**Id. at 2-3.)

12        Under AEDPA, this Court is limited to reviewing the circumstances of the commitment
13 offense only, as the other factors relied upon were found to be unsupported by "some evidence."
14 The BPH found that the commitment offense was carried out in an especially cruel, callous and
15 dispassionate manner. (Exhibit B, 56:9-12; Cal.Code Regs. tit. 15, § 2402(c)(1)(E).)[3]
16 Specifically, Petitioner threw his girlfriend's 16-month-old child to the ground and stepped or
17 stomped on the child's stomach, causing his death.  (Exhibit B, at 56.)  It was unknown how long
18 the child suffered with tears in his liver and spleen prior to his death.  (Id.)  The BPH noted that
19 the victim had been abused for a period of time, hours or days, depending on the facts relied on
20 in the commitment offense.  (Id. at 57.)  The motive for the crime was very trivial, as Petitioner
21 went into a rage by stomping on the child's stomach simply because he was crying.  (Id. at 14-

---

[3] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances tending to demonstrate unsuitability for parole regarding the committed offense.  The factors to be considered include:
  (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
  (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
  (C) The victim was abused, defiled or mutilated during or after the offense.
  (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
  (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

15.)

After reviewing record, the Court finds that there was "some evidence" to support the BPH's denial of parole. Under California law, the commitment offense alone provides a sufficient basis to deny parole. In re Dannenberg, 34 Cal.4th at 1061, 1095 (2005); Cal. Penal Code § 3041(b). In order to find that an offense was committed "in an especially heinous, atrocious or cruel manner, there must be some evidence that the "violence and viciousness of the inmate's crime" is greater than that which is "minimally necessary to convict [the defendant] of the offense for which he is confined. (Cal. Code Reg. tit. 15, § 2402(c)(1); In re Dannenberg, 34 Cal.4th 1061, 1095 (2005). In California, "[s]econd degree murder is defined as the unlawful killing of a human being with malice aforethought, but without the additional elements-i.e., willfulness, premeditation, and deliberation-that would support a conviction of first degree murder." People v. Nieto Benitez, 4 Cal.4th 91, 102 (1992). "Malice, for the purpose of defining murder, may be express or implied. ([Cal. Penal Code] § 188.) It is express 'when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature.' ([Cal. Penal Code] § 188; People v. Mattison (1971) 4 Cal.3d 177, 182, 93 Cal.Rptr. 185, 481 P.2d 193.) Implied malice is present "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." ([Cal. Penal Code] § 188; People v. Mattison, *supra*.)." Based on the circumstances described *infra*, the BPH identified more than the minimal requirements for a conviction of second degree murder.

Petitioner threw the defenseless 16-month-old child to the ground and then viciously stomped on his stomach, causing the child to suffer a tear in his liver and spleen resulting in his death. There is simply no explanation for such a brutal and violent attack on a young and vulnerable child. The attack was precipitated merely by the child's crying. Petitioner never initiated assistance to the victim. After the attack, Petitioner placed the child back into bed, as if nothing had happened, and went back to sleep. (Id. at 14-15.) It was the child's mother who discovered that the child was not breathing, and only then did Petitioner perform CPR and an ambulance was called. (Id.) In addition, it was noted that there was evidence that the victim had been physically abused on a number of occasions prior to his death. (Id. at 60.) After the crime,

Petitioner admitted to the victim's mother that he stomped on the child's stomach, and stated that he did not feel bad. (Id. at 14, 59.) These circumstances clearly support the BPH's finding that the offense was carried out in a dispassionate manner, demonstrating an exceptionally callous disregard for human suffering, as it was unknown how long the victim was left to suffer.

At this time and on this record, the Court finds that the circumstances of the commitment offense support the BPH's finding that at the 2005 hearing, Petitioner presents an unreasonable danger to public safety. That said, the Court acknowledges that the Ninth Circuit has recognized, despite the upholding of the denial of parole, that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs v. Terhune. 334 F.3d 910, 916-917 (9th Cir. 2003). In Sass v. California Board of Prison Terms, 461 F.3d 1123 (9th Cir. 2006), the Ninth Circuit held that it was not a per se due process violation if the Board determines parole suitability based solely on the unchanging factors of the commitment offense and prior offenses. Sass, at 1129 (prisoner's commitment offenses in combination with prior offenses amounted to some evidence to support the Board's denial of parole). However, the Court did not take issue with the comment in Biggs that over time a commitment offense may be less probative value in relation to the prisoner's current threat to public safety.

In Irons v. Carey, 505 F.3d 846, as amended, (July 13, 2007), petition for rehearing en banc pending, the Ninth Circuit again upheld the denial of parole based on the prisoner's commitment offense and prior criminal history, but acknowledged the continuing validity of the holding in Biggs, and finding that relief for Irons was foreclosed by Sass. The Court pointed out that in the cases where it previously found that the denial of parole based solely on the commitment offense withstood a due process challenge, the prisoners had not yet served the minimum number of years for which they were sentenced. Irons, at 853-854.

Most recently in Hayward v. Marshall, __ F.3d __, 2008 WL 43716 (9th Cir. January 3, 2008), the Ninth Circuit, in reversing the denial of parole, again affirmed its prior comments in Biggs, Sass, and Iron, that "'in some cases, indefinite detention based solely on an inmate's

9

commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes.'" Hayward, 2008 WL at *7 (citing Irons, 2007 WL 2027359, at *6.)  In addition, the Ninth Circuit clarified that for purposes of collateral review "'[t]he test is not whether some evidence supports the reasons the Governor cites for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety.  Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety." Hayward, at *5 (cases citations therein.)

The present case is factually distinguishable from Hayward.  There, at the time of the Governor's reversal of a grant of parole, Hayward had served 27 years of a 15 year to life sentence, the circumstances of the second degree murder were much less grave than the circumstances of the present second degree murder, as the Ninth Circuit noted that Hayward's crime "was committed decades ago and with the type of unusual provocation", and the BPH had previously twice granted Hayward parole.[4]  Hayward, at *1, 6.  Here, although at the 2005 hearing, Petitioner had served 19 years-four years beyond the minimum 15 years-this alone does not result in a per se violation of due process, as the Ninth Circuit has not provided a concrete standard as to when (and under what exact circumstances) the sole reliance on the unchanging circumstances of the commitment offense rises to the level of a due process violation.[5]

This Court acknowledges that at some point in time the circumstances of Petitioner's commitment offense may no longer support a finding that he currently poses an unreasonable risk

---

[4] Hayward, along with other members of a motorcycle gang, confronted a man at a bar "who, according to conflicting accounts, had either slapped or battered and attempted to rape Hayward's girlfriend (who would later become Hayward's wife).  The confrontation turned physical and ended after Hayward stabbed the man twelve times, killing him.  In 1980, a California jury convicted Hayward of second degree murder, and the court sentenced Hayward to state prison for a term of fifteen years to life." Hayward, at *1.  Although the Ninth Circuit found that the circumstances of Hayward's offense did not alone support a finding that he was a danger to society, the Court noted that "certain conviction offenses may be so 'heinous, atrocious or cruel' that a prisoner's due process rights might not be violated if he or she were denial parole solely on the basis of the nature of the conviction offense.  We need not identify those offenses here.  We confine our holding to the facts of this case and the nature of Hayward's particular conviction offense."  Id. at *8, n.10.

[5] Nor has the United States Supreme Court spoken on the issue of whether and when the denial of parole based solely on the continued reliance of the circumstances of the commitment offense results in a due process violation, and therefore there is no clearly established Supreme Court authority on this issue.

10

to public safety, at this point, some evidence supports the BPH's finding based on the commitment offense, and the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **January 23, 2008**          /s/ **Dennis L. Beck**
                                    UNITED STATES MAGISTRATE JUDGE